23CA1536 Mercy v Johnson 08-15-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1536 City and County of Denver District Court No. 23CV417 Honorable Andrew J. Luxen, Judge Mercy Housing Management Group, Inc., Plaintiff-Appellee, v. Devette Johnson, Defendant-Appellant. JUDGMENT REVERSED, ORDER VACATED, AND CASE REMANDED WITH DIRECTIONS Division VI Opinion by JUDGE SCHUTZ Lipinsky and Martinez*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 15, 2024 Gordon Rees Scully Mansukhani LLP, John R. Mann, Denver, Colorado, for Plaintiff-Appellee CED Law, Spencer Bailey, Denver, Colorado, for Defendant-Appellant *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023. 
1 ¶ 1 In this eviction proceeding, Devette Johnson appeals the district court’s orders granting judgment for possession to Mercy Housing Management Group, Inc. (Mercy Housing) and denying his motion for a new trial. We reverse the judgment, vacate the order for issuance of a writ of restitution, and remand. I. Background and Procedural History ¶ 2 In 1994, Johnson was diagnosed with a traumatic brain injury (TBI) after an accident. His condition impacts his cognitive abilities, and, consequently, he has difficulty regulating his emotions, controlling impulses, and comprehending verbal and written communications. As relevant here, Johnson’s injuries qualified him as an individual with a disability under the Colorado Fair Housing Act (CFHA), §§ 24-34-501 to -509, C.R.S. 2023, and the Federal Fair Housing Act (FHA), 42 U.S.C. §§ 3601–3619. ¶ 3 Mercy Housing manages an apartment complex owned by Parkside Apartments in Denver. The complex provides residences for qualifying individuals under the Federal Low-Income Housing 
2 Tax Credit Program.
1 To ensure that Johnson remained eligible for the tax credit, the parties’ lease agreement required Johnson to submit an annual financial recertification. A. The County Court FED Proceedings ¶ 4 In July 2022, Mercy Housing filed a forcible entry and detainer (FED) eviction action against Johnson in Denver County Court. Mercy Housing alleged that Johnson committed material lease violations including (1) failing to complete the recertification documents; (2) cursing and screaming at fellow residents; and (3) causing noise and excessive traffic. ¶ 5 In response, Johnson requested reasonable accommodations based on his disability in the form of additional time to cure the alleged violations and postponement of the court hearing on the eviction claim. See C.R.C.P. 316.5(b) (requiring that eviction hearings generally be held within seven to ten days after the 1 The Low-Income Housing Tax Credit program is administered by the U.S. Department of Housing and Urban Development. The program funds tax credits for the acquisition, rehabilitation, or new construction of rental housing for low-income tenants. Off. of Pol’y Dev. & Rsch., U.S. Dep’t of Hous. & Urb. Dev., Low-Income Housing Tax Credit (LIHTC) (2024), https://perma.cc/8DZW-86ZG. 
3 defendant files an answer); see also § 13-40-114, C.R.S. 2023 (if either party requests a delay of the trial beyond five days, the court may, upon a showing of good cause, require the posting of a bond). The court granted the postponement and — in accordance with section 13-40-111(6)(b), C.R.S. 2023 — ordered “discovery of all ‘documents in the landlord’s and tenant’s possession relevant to the current action.’” ¶ 6 In September 2022, Mercy Housing representatives met with Johnson and his counsel. Before the meeting, Johnson’s counsel submitted a written request for reasonable accommodations, which the parties discussed. On October 14, Johnson’s counsel submitted a second written request for accommodations. ¶ 7 On October 17, the parties filed a “Non-Judgment Stipulation Agreement” (the stipulation) allowing Johnson to retain possession of the premises subject to his agreement to • timely complete recertification paperwork; • pay past due rent; • provide Mercy Housing with a detailed statement explaining how he would like to be made aware of future alleged lease violations; and 
4 • comply with the terms of the lease and commit no substantial or repeat lease violations for 120 days following the stipulation’s execution. ¶ 8 The stipulation provided that Mercy Housing would file a motion to dismiss the county court case without prejudice, but it also stated that, if Johnson failed to comply with the stipulation, Mercy Housing could file a motion to reopen the case and request entry of a judgment for possession after giving Johnson forty-eight hours of advance notice. The county court accepted the stipulation and dismissed the FED action without prejudice. ¶ 9 Unbeknownst to Johnson, the day following the stipulation’s filing, an agent of Mercy Housing, Lisa Archuleta, signed the request for reasonable accommodations in the format that Johnson’s counsel had previously submitted on October 14. The same day, Archuleta also signed an approval of the request for accommodations stating, Verbal and written notice will be provided for alleged lease violations with the opportunity to request a meeting to discuss within . . . [ten] days of the request. [Johnson’s] attorneys will also be notified via email [one] business day prior to issuing the written notice . . . . Please see accommodation request dated 9/23/22 
5 signed by [Johnson’s counsel] 10/14/22 and Lisa Archuleta 10/18/22 for additional details. ¶ 10 In February 2023, Mercy Housing informed Johnson’s counsel that it intended to file a motion to reopen the FED case to seek a judgment for possession of the premises because Johnson had materially violated the lease during the 120-day period specified in the stipulation. Johnson filed an objection, in which he asserted, Johnson has a disability and [Mercy Housing] failed to follow Mr. Johnson’s previously agreed upon reasonable accommodations regarding how to notify him of any allegations, including requiring verbal and written notice, and requiring that [Mercy Housing] take into account whether his disability contributed to the behavior underlying the allegations, in violation of Federal and Colorado Fair Housing laws. In addition, Johnson asserted, On September 23, 2022, the parties met in person to discuss the reasonable accommodation request and the allegations underlying his FED case. At that meeting, in addition to other topics, the parties discussed in detail Mr. Johnson’s reasonable accommodation request. Specifically, [Mercy Housing] agreed that, as a reasonable accommodation of Mr. Johnson’s disabilities, moving forward [Mercy Housing] would provide Mr. Johnson detailed notice of alleged violations both in writing and verbally, as well as ensuring that Mr. Johnson would have the 
6 opportunity to request a meeting to discuss any allegations. [Mercy Housing] also agreed to take into consideration whether Mr. Johnson’s disability contributed to the alleged lease violations. The updated [Reasonable Accommodation] Request clearly states that Mr. Johnson will be given verbal and written notice of any alleged violations to ensure that he understands the allegations against him, as well as the opportunity to meet to discuss the violations . . . . In addition to requiring that [Mercy Housing] provide verbal and written notice and an opportunity to meet, the request also required that [Mercy Housing] notify Mr. Johnson’s counsel via email about the intent to provide him a notice at least [one] business day prior to doing so . . . . [T]his accommodation governed any potential future issues which was understood and agreed upon by all parties. ¶ 11 In April 2023, Johnson filed a motion for leave to file an amended answer to enable him to pursue CFHA and FHA counterclaims against Mercy Housing. To facilitate the filing of the counterclaims, Johnson requested that the case be transferred to the district court.
2 2 Counterclaims alleging unfair or discriminatory behaviors pursuant to the CFHA must be brought in the United States district court or state district court. § 24-34-505.6(1), C.R.S. 2023. 
7 ¶ 12 Without awaiting a response from Mercy Housing, the county court granted Johnson’s motion to transfer the case to district court and his motion to file an amended answer. In his amended answer, Johnson asserted multiple counterclaims, including that Mercy Housing engaged in unlawful discriminatory housing practices by not providing him with reasonable accommodations. ¶ 13 Mercy Housing filed a motion for reconsideration in the county court, asserting that the court erred as a matter of law by allowing Johnson to amend his answer. It argued that the only issue properly before the court was whether Johnson violated the stipulation. But because the case had already been transferred to the district court, the county court was without jurisdiction and took no action on the motion. B. The District Court Proceedings ¶ 14 On August 2, 2023, the district court granted Mercy Housing’s motion to reconsider. It found that the county court had improvidently granted Johnson’s motion for leave to amend the answer and therefore denied the motion, striking Johnson’s amended answer and counterclaims. But the district court retained jurisdiction over the case and set the matter for a one-day hearing 
8 to address Mercy Housing’s motion for entry of judgment for possession based on Johnson’s alleged violation of the stipulation. ¶ 15 That same day, Johnson filed a “Motion for Leave to Amend Answer, to Continue August 7, 2023 Hearing, and to Reconsider,” requesting that the court reconsider its decision to deny the motion to amend and accept Johnson’s amended answer and counterclaims, which included affirmative defenses and counterclaims based on Mercy Housing’s alleged CFHA and FHA violations. ¶ 16 At the beginning of the hearing, Mercy Housing objected to Johnson’s motion for leave to amend and moved to strike any evidence of discrimination and to bar Johnson from raising the CFHA or FHA. Johnson argued that he had consistently asserted his rights to reasonable accommodations, that such rights applied to the enforcement of the stipulation, and that Mercy Housing had agreed to provide reasonable accommodations with respect to any alleged future violations of the stipulation. Johnson also noted the General Assembly’s recent adoption of S.B. 23-184, which codified a tenant’s right to raise CFHA violations as an affirmative defense in 
9 FED actions. Ch. 402, sec. 6, § 13-40-113(2.5), 2023 Colo. Sess. Laws 2413–14. ¶ 17 The district court again denied Johnson’s motion for leave to amend and granted, in part, Mercy Housing’s motion to strike any discrimination defense. The court concluded that Mercy Housing’s motion for possession of the premises was limited to whether Johnson violated the stipulation and that evidence of Mercy Housing’s alleged CFHA and FHA violations was irrelevant to its effort to enforce the stipulation. But the court also ruled that Johnson could attempt to establish that the parties agreed to incorporate reasonable accommodation requirements into the stipulation. In reaching this conclusion, the district court noted that S.B. 23-184, by its terms, did not apply to this case;
3 Johnson could pursue claims for the alleged CFHA and FHA violations outside the pending proceeding to enforce the stipulation; and the matter had gone on for too long. 3 S.B. 23-184 states that the legislation applies to “conduct that occurs after the applicable effective date of this act,” August 7, 2023. Ch. 402, sec. 7(2), 2023 Colo. Sess. Laws 2414. 
10 ¶ 18 Following the evidentiary portion of the hearing, Johnson’s counsel attempted to argue that Mercy Housing had failed to provide Johnson with reasonable accommodations with respect to the alleged violations of the stipulation. When Mercy Housing objected based on the court’s prior rulings, the court responded by stating, “I’m not going to consider evidence of [f]air [h]ousing [v]iolations.” As the basis for its entry of a judgment for possession and ordering issuance of a writ of restitution in favor of Mercy Housing, the court reasoned: So the Court finds that it does have jurisdiction over this matter and that [Mercy Housing] has proven by preponderance of the evidence, violations, sufficient of the — sufficient violations of this non-judgment stipulation agreement. And will find in favor of [Mercy Housing]. The Court further finds that the testimony of [the current or former employees of Mercy Housing] was all credible. The evidence from Dr. Silva [a medical doctor who treated Johnson)] about [Johnson’s] mental health condition, about his — his other disabilities or associated conditions from his traumatic brain injury is — is the Court is sympathetic. However, that is not the issue to be decided here today. The issue is to decide whether or not there had been a violation of the stipulation agreement and [Mercy Housing’s] 
11 witnesses were credible in their efforts to testify about those issues, those specifics. ¶ 19 Johnson appealed and, shortly thereafter, his counsel filed a motion to set aside the judgment and for a new trial under C.R.C.P. 60(b)(2). Johnson premised the motion on Mercy Housing’s failure to disclose the two October 2022 accommodation documents that Archuleta signed. A motions division of this court issued a limited remand order directing the district court to conduct a hearing to consider Johnson’s C.R.C.P. 60(b) motion. The district court subsequently denied the motion. ¶ 20 Johnson now appeals the judgment of possession and the order denying his motion for a new trial. Johnson argues that the district court abused its discretion when it precluded him from raising Mercy Housing’s alleged CFHA and FHA violations as an affirmative defense and that the court erred by denying his post-
trial motion. We agree with the first contention and therefore do not address the second. 
12 II. CFHA as an Affirmative Defense A. Standard of Review and Applicable Law ¶ 21 The proper construction of a statute presents a mixed question of fact and law that we review de novo. Mook v. Bd. of Cnty. Comm’rs, 2020 CO 12, ¶ 24. Our primary goal is to give effect to the General Assembly’s intent. Id. To achieve that purpose, we read a statutory scheme as a whole and give consistent, harmonious, and sensible effect to all its parts, and we read words and phrases in accord with their ordinary and common meanings. Colo. Prop. Tax Adm’r v. CO2 Comm., Inc., 2023 CO 8, ¶ 22. ¶ 22 Like the issue of statutory construction, we review de novo the legal question of whether an affirmative defense is available to a defendant. In re Marriage of Kann, 2017 COA 94, ¶ 11. The interpretation of a settlement agreement also presents a question of law that we review de novo. See, e.g., Ringquist v. Wall Custom Homes, LLC, 176 P.3d 846, 849 (Colo. App. 2007). 1. Forcible Entry and Detainer Actions ¶ 23 FED actions are expedited proceedings. The General Assembly created a “special forcible entry and detainer action with accelerated trial procedures . . . to avoid much of the expense and delay 
13 incident to the more cumbersome action of ejectment formerly employed at common law.” Miles v. Fleming, 214 P.3d 1054, 1056 (Colo. 2009). Section 13-40-104, C.R.S. 2023, requires that, before filing an FED action, a landlord must provide a residential tenant who has allegedly violated the terms and conditions of a lease with written notice and an opportunity to cure the alleged breach. ¶ 24 A tenant who wishes to contest an FED action must provide the court with a written answer that (1) sets forth the grounds on which the tenant bases their claim for possession and (2) admits or denies the material allegations of the complaint. In addition, the tenant must present every defense upon which the tenant intends to rely in the answer or a simultaneously filed motion. § 13-40-
113(1), C.R.S. 2023. ¶ 25 Normally, affirmative defenses are asserted within an answer. C.R.C.P. 8(c). However, in the context of a motion to enforce the terms of a settlement agreement, if the parties and the court treat such motion as the equivalent of a new claim, a defendant’s response to that motion may be treated as an answer. See Pima Fin. Serv. Corp. v. Selby, 820 P.2d 1124, 1126-27 (Colo. App. 1991) (holding that, when a party sets forth a claim arising after the initial 
14 pleadings, and the parties consent to the procedure to address the issues raised in a motion to enforce a settlement agreement, the trial court may treat the motion as a complaint and the response as an answer). 2. Fair Housing Claims ¶ 26 The CFHA and FHA prohibit landlords from engaging in unlawful discriminatory behavior. See § 24-34-502(1)(a)(I), C.R.S. 2023; 42 U.S.C. § 3604. Such behavior includes refusing to “make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford the individual with a disability equal opportunity to use and enjoy a dwelling.” § 24-34-502.2(2)(b), C.R.S. 2023. 3. The CFHA as an Affirmative Defense to an FED Action ¶ 27 In February 2024, the Colorado Supreme Court addressed in Miller v. Amos, 2024 CO 11, whether a tenant may assert an affirmative defense predicated on the CFHA in the expedited context of an FED action. Id. at ¶ 2; see also §§ 13-4-101 to -128, C.R.S. 2023. While acknowledging the tension created by the potential delays associated with allowing a defense based on the CFHA, the supreme court concluded that statutory requirement that FED 
15 proceedings be expedited does not bar a tenant from asserting an affirmative defense based on an alleged CFHA violation. Miller, ¶ 2. ¶ 28 In reaching this conclusion, the supreme court noted that “due process requires that a defendant in an FED action has ‘an opportunity to fully present available defenses.’” Id. at ¶ 26 (quoting Butler v. Farner, 704 P.2d 853, 858 (Colo. 1985)). Moreover, the court reasoned, Colorado’s FED law does not sacrifice a tenant’s rights at the altar of expediency. On the contrary, a tenant’s right “to be heard on relevant matters, and to be secure in their constitutional rights, as well as the desirable purpose of preventing a multiplicity of suits, is, and must be, superior to the desire to provide a speedy remedy for possession.” A tenant must be afforded due process. And “[s]ome delay, of course, is inherent in any fair-minded system of justice.” Id. at ¶ 36 (first quoting Rosewood Corp. v. Fisher, 263 N.E.2d 833, 839 (Ill. 1970); and then quoting Pernell v. Southall Realty, 416 U.S. 363, 385 (1974)). B. Application ¶ 29 While we appreciate that the district court did not have the benefit of the Miller decision at the time of the possession hearing, the case establishes that a tenant may assert a CFHA violation as 
16 an affirmative defense in an FED action. This is true even if the FED action preceded Miller. Id. at ¶ 38 n.5 (“S.B. 23-184 makes clear what the law has been since the CFHA was enacted: A landlord cannot evict a tenant for reasons that are unlawful under the CFHA.”). This language from Miller applies irrespective of whether a tenant had a possible alternative remedy for money damages based on the alleged violation of the CFHA. Id. at ¶ 34 (“A tenant’s right to be free from discriminatory conduct and right to due process are undermined if the tenant is not able to prevent an unlawful eviction in the first instance.”). ¶ 30 We do not agree with Mercy Housing’s argument that Johnson was precluded from asserting the affirmative defense because he had not previously asserted it. Johnson’s initial answer filed in the county court preserved the right to amend the answer and raise counterclaims based on alleged violations of the CFHA and FHA. His county court answer was neither vacated nor abandoned when the case was transferred to the district court. And the district court’s order striking the amended answer did not effect a waiver of the right to assert his defenses under the CFHA and FHA. 
17 ¶ 31 The stipulation permitted Johnson to oppose Mercy Housing’s motion to reopen and to request a hearing in the FED proceeding. In its motion to reopen the case, Mercy Housing alleged that Johnson violated the lease after the parties entered into the stipulation. In the motion, Mercy Housing requested a judgment of possession and writ of restitution, based not on the allegations in the original complaint, but on its new allegations regarding Johnson’s post-stipulation violations of the lease. In his response, Johnson defended against these new allegations. The parties and the district court ignored the original allegations — which Johnson never admitted and upon which judgment was never entered — and treated the new allegations in the motion to reopen as the basis for a judgment of possession and writ of restitution. ¶ 32 Under these circumstances, Mercy Housing’s motion operated as the functional equivalent of a complaint because it asserted a claim for relief when it requested that the court reopen the case, enter a judgment of possession in its favor, and issue a writ of restitution. See Pima, 820 P.2d at 1126. Johnson’s response to the motion operated as the functional equivalent of an answer and asserted that he was denied his right to reasonable 
18 accommodations in the enforcement of the stipulation. See id. And the hearing on the motion to reopen was the functional equivalent of a new FED hearing. Thus, the court erred by not allowing Johnson to plead the CFHA as an affirmative defense. ¶ 33 Mercy Housing alternatively argues that, even if an alleged violation of the CFHA was available as an affirmative defense and Johnson adequately asserted it, he nevertheless waived such a defense under the terms of the stipulation. Mercy Housing points to the first paragraph of the stipulation, which notes that the parties entered into it as a reasonable accommodation under the CFHA and the FHA. Mercy Housing then points to paragraph three of the stipulation, which sets forth the obligations that Johnson agreed to perform, and paragraph four, which states as follows: If [Mercy Housing] alleges that [Johnson] has failed to comply with any of the requirements stated in paragraph [three], [Mercy Housing] will file a motion to Reopen Case and Enter a Judgment for Possession and Issue a Writ of Restitution [forty-eight] hours after giving [Johnson], via [Johnson’s] counsel, a Notice of Default specifying in detail the alleged default . . . . Taken together, Mercy Housing argues that these provisions amounted to a settlement of any past CFHA and FHA violations and 
19 a prospective waiver of the right to reasonable accommodations in the enforcement of the stipulation based on subsequent breaches of its terms. ¶ 34 Johnson responds by noting that Mercy Housing fails to cite any authority to support the conclusion that a tenant may prospectively waive their right to reasonable accommodations under the CFHA or FHA. Johnson also argues that federal authorities arising in the context of employment discrimination counsel against the enforcement of a prospective waiver of rights under the CFHA or FHA. See, e.g., Alexander v. Gardner-Denver Co., 415 U.S. 36, 51 (1974) (“[W]e think it clear that there can be no prospective waiver of an employee’s rights under Title VII [of the Civil Rights Act of 1964]. . . . [W]aiver of these rights would defeat the paramount congressional purpose behind Title VII.”); Tex. Dep’t of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc., 576 U.S. 519, 533 (2015) (applying disparate impact case law under Title VII in interpreting the FHA). ¶ 35 But even if we assume, without deciding, that a tenant may prospectively waive their rights under the CFHA and FHA, we conclude that the stipulation did not accomplish such a waiver. 
20 Although paragraph four allowed Mercy Housing to file a motion to reopen the dismissed case to seek a judgment for possession and writ of restitution in the event of Johnson’s alleged breach, the last sentence of paragraph four permitted Johnson to oppose the motion and request a hearing. The stipulation does not state that Johnson waived any defenses he may have with respect to future breaches of the lease or motions to enforce the stipulation. ¶ 36 Moreover, the stipulation does not support Mercy Housing’s argument that the motion to enforce the stipulation presented only a contractual claim that was independent of the parties’ rights and obligations under the FED statutes. The stipulation repeatedly references the substance, procedures, and remedies of the FED statutes. Moreover, in its district court filings and at the hearing, Mercy Housing repeatedly invoked its rights and remedies under the FED statutes. ¶ 37 Finally, we fail to see a material distinction between a claim to enforce the terms of a lease agreement through application of the FED statutes and the claim to enforce this stipulation through application of the FED statutes. Both actions are brought to enforce the terms of a lease, and both actions are subject to the 
21 rights, remedies, and defenses associated with the FED statutes, including affirmative defenses under the CFHA. Miller, ¶ 2. ¶ 38 Based on the foregoing, we conclude that Johnson did not waive his right to assert alleged violations of the CFHA and the FHA as affirmative defenses to Mercy Housing’s motion to reopen the FED case to enforce the stipulation. ¶ 39 Finally, we note that, in addition to his affirmative defense based on the CFHA and the FHA, Johnson also asserted that the parties agreed that enforcement of the stipulation would be subject to reasonable accommodations. Mercy Housing disputes this contention, and the district court resolved the contractual interpretation claim against Johnson. But the district court did so based on testimony from Mercy Housing representatives whom Johnson was unable to impeach with evidence of the two accommodation forms that Archuleta signed in October 2022. Because the district court excluded it, we cannot say whether such evidence would have materially impacted the court’s assessment of the witnesses’ credibility or its interpretation of the stipulation. On remand, the district court should determine, consistent with this opinion, whether the documents may be admitted into evidence. 
22 C. Other Matters ¶ 40 In view of our resolution of the reasonable accommodation issues, we need not address Johnson’s contention that the district court erred by denying his motion for a new trial. ¶ 41 It is important to summarize what we are not deciding. We do not resolve the nature and extent of any reasonable accommodations Mercy Housing was required to provide Johnson, whether under the CFHA, FHA, or the stipulation, and we do not decide whether Mercy Housing failed to fulfill any such obligations. Similarly, we do not address the merits of Mercy Housing’s argument that it was excused from providing Johnson with reasonable accommodations based on its contention that his conduct jeopardized the safety of other tenants. See § 24-34-502(1)(a)(I) (“[N]othing in this subsection (1)(a) requires a dwelling to be made available to an individual whose tenancy would constitute a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damage to the property of others.”). The parties and the court may address these issues on remand. 
23 VI. Disposition ¶ 42 The district court’s judgment for possession is reversed, the order for issuance of a writ of restitution is vacated, and the case is remanded for further proceedings consistent with this opinion. JUDGE LIPINSKY and JUSTICE MARTINEZ concur.